# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-4322

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

RONALD BERNARD JOHNSON,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 02-CR-237—**J.P. Stadtmueller**, *Judge.*

———————

ARGUED APRIL 20, 2005—DECIDED JULY 19, 2005

———————

Before COFFEY, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* In this appeal Ronald Johnson challenges the admission into evidence of statements that he never properly sought to suppress in the district court. He contends that when police officers interrogated him in September 2002 about the location of a firearm, they did so without advising him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). In response to this custodial interrogation, Johnson says, he revealed the location of the gun. Johnson was later convicted of one count of possession of a firearm by a felon. See 18 U.S.C. § 922(g). In addition,

Johnson now argues that his sentencing violated the principles announced in *United States v. Booker*, 125 S. Ct. 738 (2005). We affirm his conviction but order a limited remand under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005).

In September 2002 Milwaukee police responded to a 911 report that Johnson had been threatening people at a party with a gun and had just fled to his home or the nearby woods. Officers found Johnson at his home and, after asking him to step outside, arrested him. They neglected to inform Johnson of his rights at that point, as they should have done under *Miranda*. In the meantime, the police conducted a protective sweep of the house, but they found no weapons or other people. They then placed Johnson into the police car with Officer Jenkins, who began asking preliminary questions. According to Officer Jenkins's testimony later at a suppression hearing, Johnson was in custody at this point. Officer Jenkins eventually asked Johnson for consent to search the house, and Johnson agreed. Other officers conducted a more thorough search and returned to the car to report that they once again found no weapons. Johnson then signed Officer Jenkins's memo book, documenting that he consented to the search, and agreed to show the officers where the gun was located. He then led them straight to the gun, pointed it out, and said "this is where it is." It is not entirely clear from the record whether Officer Jenkins asked Johnson for help finding the weapon or whether Johnson volunteered to help the officers.

Johnson filed a pretrial motion to suppress the gun on the single ground that the warrantless search violated his rights under the Fourth Amendment. The district court denied his motion, concluding that he consented to the search of his house. For the first time on appeal Johnson now argues that Officer Jenkins failed to advise him of his *Miranda* rights before subjecting him to questions and actions that amounted to custodial interrogation. Specifi-

cally, Johnson contends that his agreement to lead the officers to the gun, his testimonial act of pointing to it, see *Pennsylvania v. Muniz*, 496 U.S. 582, 595 n.9 (1990) ("non-verbal conduct contains a testimonial element whenever the conduct reflects the actor's communication of his thoughts to another"), and his statement "that's where it is" should have been suppressed, because all three communications were gathered in violation of his *Miranda* rights. In his opening brief Johnson also argued that the gun itself should have been suppressed as the fruit of the *Miranda* violation, but he has now withdrawn that argument in response to the Supreme Court's decision in *United States v. Patane*, 124 S. Ct. 2620 (2004).

Because Johnson failed to seek suppression of his statements in the district court, our first concern is whether he has preserved any argument for appeal. The government argues that Johnson's failure to raise any *Miranda* arguments in his pretrial motion to suppress constitutes a "waiver" according to FED. R. CRIM. P. 12(e) and precludes any appellate review. Rule 12(b) requires defendants to seek suppression of evidence before trial or by another deadline set by the district court, and Rule 12(e) says that a failure to do so "waives" the issue.

We think, however, that in context the word "waiver" in Rule 12(e) does not carry the strict implication of an "intentional relinquishment of a known right" that precludes all appellate review. *Miranda v. Leibach*, 394 F.3d 984, 992 n.3 (7th Cir. 2005); *United States v. Jacques*, 345 F.3d 960, 962 (7th Cir. 2003). In *United States v. Clarke*, 227 F.3d 874, 880-81 (7th Cir. 2000), we reiterated that a true waiver occurs only through an *intentional* relinquishment of an argument, while a forfeiture is the result of a *neglectful* failure to pursue an argument. *Id.* If a defendant, out of neglect, fails to move to suppress evidence in the district court, that conduct is more akin to a forfeiture than a waiver. *Id.*; see also *United States v. Davenport*, 986 F.2d

1047, 1049 (7th Cir. 1993) (describing the effect of Rule 12(e) as a forfeiture); but *cf. United States v. Mancillas*, 183 F.3d 682, 703-04 (7th Cir. 1999); *United States v. Krankel*, 164 F.3d 1046, 1051-52 (7th Cir. 1998). It is also worth noting that Rule 12(e) itself says that "[f]or good cause, the court may grant relief from the waiver." This too makes it sound more like what we would normally call forfeiture. Here, there is no indication that Johnson intentionally decided to abandon his *Miranda* argument, and so we view his argument as forfeited and subject to plain error review.

Before we even reach the question of plain error, however, we must consider the antecedent question implicit in the language of Rule 12(e) that we just quoted—namely, whether Johnson has shown good cause for his failure to make a timely motion to suppress on the *Miranda* ground. See *Davenport*, 986 F.2d at 1048-49; see also *Clarke*, 227 F.3d at 880. The good cause requirement is a prerequisite for relief whether he is asking the district court or this court to consider his suppression argument. If he can meet the "more exacting" standard of demonstrating "cause" for his failure to seek suppression earlier, we can then consider whether the lack of suppression was an error that is plain and that affected his substantial rights and seriously undermined the integrity of the judicial proceeding, see *Paladino*, 401 F.3d at 481.

In this case, Johnson has not even suggested that he has cause for his failure to seek suppression of his statements in the district court. He filed a timely motion to suppress the physical evidence that resulted from the same encounter with the police that yielded the statements he wants to suppress now. Johnson never asked the district court in that motion or at any other time to suppress his statements, and he has offered no reason for waiting until appeal to do so. We could therefore reject his *Miranda* argument on that ground alone.

Even if Johnson could demonstrate good cause, he could not satisfy all of the requirements of plain error review. Demonstrating error would, perhaps, be the easiest hurdle. Assuming for a moment that in addition to asking Johnson for consent to search his house Officer Jenkins also asked Johnson to help the officers with the search, we agree with Johnson that the officer's request for assistance constitutes interrogation and should have been preceded by *Miranda* warnings. See *New York v. Quarles*, 467 U.S. 649, 652, 655 (1984) (officer interrogated defendant when he asked where gun was located and defendant nodded in direction and said, "over there"). Although the government suggests that Officer Jenkins's request for Johnson's help in finding the weapon was "part and parcel" of the officer's request for consent to search, we do not see why that should matter. Interrogation is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and questioning) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnote omitted); *cf. United States v. Mobley*, 40 F.3d 688, 690-91 (4th Cir. 1994) (before executing a search warrant, officers engaged in interrogation by asking suspect if there were any weapons or other items in the house). Whether preceded by a request to search or not, an inquiry about the location of evidence meets the definition of interrogation. The government's insistence that Johnson "voluntarily and spontaneously launched into a discussion of the incident" likewise does not rule out the possibility of a *Miranda* violation during the encounter. Even if Johnson initiated the conversation about the gun, the important questions are what role Officer Jenkins played in the exchange and whether the defendant waived his rights. As the Supreme Court has noted, when a suspect initiates contact with police, if the police respond with conduct that amounts to interrogation, "the question would be whether a valid waiver of the right to counsel and the right to silence had

occurred." *Edwards v. Arizona*, 451 U.S. 477, 486 n.9 (1981); *Oregon v. Bradshaw*, 462 U.S. 1039, 1044-45 (1983).

Even if he could show that there was error, Johnson would also have to demonstrate that the error was "plain," meaning " 'clear' " or " 'obvious.' " *United States v. Olano*, 507 U.S. 725, 734 (1993). Given *Quarles*'s clear holding that an officer's question about the location of a weapon is interrogation, we are willing to assume for present purposes that the error in admitting this evidence was likely "plain," even though we have never before addressed the government's argument that *Quarles* does not apply to an officer's question that comes on the heels of gaining consent to search. We can face that issue another day when it really matters.

Johnson's plain error argument runs aground with the third and fourth parts of the test: demonstrating that the error affect[ed] his "substantial rights" and "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466-67 (1997). Although the precise meaning of these requirements may be debatable, a defendant challenging his conviction must at least demonstrate that the error affected the verdict. See *Paladino*, 401 F.3d at 481. Johnson cannot do so. Even if we disregard all of the evidence that Johnson challenges, the government still had a compelling case. It introduced into evidence the gun itself, testimony from the two other occupants of the house that they did not know where the gun was located, and testimony from two witnesses who saw Johnson with a gun (though maybe not the same one) earlier in the evening. And if that were not enough, Johnson himself, not the government, introduced the fact that he proclaimed "this is where it is," when he took the officers to the gun's hiding place. In light of all of this, Johnson could not show that but for his statements there is a reasonable possibility that the outcome of the trial would have been different.

On the issue of sentencing, both parties agree that this case is appropriate for a limited remand under *Paladino* so that we may determine whether plain error occurred when the district court sentenced Johnson under a mandatory application of the Guidelines. We therefore AFFIRM Johnson's conviction but order a LIMITED REMAND so that the district court may advise us of its sentencing intentions now that it is clear that the Guidelines are advisory only.

A true Copy:

      Teste:

_____
***Clerk of the United States Court of
Appeals for the Seventh Circuit***