**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 18, 2005
Decided November 21, 2005

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-3601

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| v. | No. 03 CR 885 - 1 |
| BRYANT HARRIS, *Defendant-Appellant*. | John W. Darrah, *Judge* |

**ORDER**

Chicago police observed Bryant Harris selling crack on the street and arrested him. Harris, a felon, promptly revealed that he had a gun back at the apartment he shared with his mother and led the officers to it. A federal grand jury later charged Harris with possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), and conspiracy to possess and distribute crack, 21 U.S.C. §§ 846, 841(a)(1). Before trial, Harris moved to suppress the gun on the theory that he was arrested without probable cause and the gun was a tainted fruit of that arrest. The district court denied his motion. A jury found Harris guilty on the gun charge but acquitted him on the drug charge.

On appeal Harris argues that the gun should have been suppressed, not because his arrest lacked probable cause but for an entirely new reason—he says that police "tricked" him into revealing he had a gun back at his apartment. Harris also challenges the sufficiency of the evidence presented at trial. Neither contention has merit.

At the suppression hearing, Officer Thelen testified as follows: On the evening of May 22, 2003, he conducted surveillance of a three-flat on west Ohio Street. From 50 to 60 feet away, he saw three buyers separately approach Harris, engage him in brief conversation, and hand him money. According to Thelen, Harris pocketed the money and yelled, "One time!" to co-defendant Pettis, who was nearby. The buyer then walked over to Pettis, who removed a plastic strip from under a brick, tore off a piece of the strip for the buyer, and replaced the remainder of the strip back under the brick. During his seven years in the Chicago Police Department, Thelen had seen this type of two-man narcotics transaction before and testified that dealers thought it made securing a conviction more difficult. Thelen called for backup.

Backup officers arrived and detained Harris and Pettis. Officer Thelen then emerged from his hiding place, lifted the brick, and recovered the plastic strip with nine packets of apparent crack remaining. Officers placed Harris in the backseat of a squad car, and Thelen read him the *Miranda* warnings.

At that point, said Officer Thelen, Harris volunteered that he could not go back to jail and offered to produce a gun if Thelen would let him go. Harris explained that there was a gun in a blue shoe in the apartment he shared with his mother. Thelen and his backup officers, with Harris still in the car, then drove to Harris's one-room apartment where they spoke with his mother, Rosie Harris. She signed a written consent to search the apartment, and the officers recovered a pistol from inside a man's blue shoe.

Harris, on the other hand, testified at the suppression hearing that he was by himself drinking cognac and smoking cigarettes on a friend's porch when the police appeared and arrested Pettis. Until that point, according to Harris, he was aware that Pettis was selling drugs nearby, but had neither participated in the sales nor conversed with Pettis. The officers arrived and handcuffed him anyway, and Officer Thelen told him they received a call about a man with a gun. Harris maintained that Thelen threatened to plant five bags of crack on him unless he gave up the gun. Harris responded that Thelen would find a gun at his mother's house. Harris testified that he believed Thelen had "tricked" him into disclosing the gun and stated that Thelen even admitted doing so in front of another officer.

Harris admitted during cross-examination that, after police found the gun, they took him to the station where an ATF agent prepared a two-page, written

statement for his signature.  Before signing it, Harris conceded, the ATF agent gave him *Miranda* warnings again, which he acknowledged and waived.  Harris initially signed only the first page of the statement but later that day, after a third round of *Miranda* warnings, he signed the second page.  Harris testified that no one forced him to sign anything at any time.

The district court denied Harris's motion to suppress.  The court credited Officer Thelen over Harris and reasoned that, based upon the officer's experience and observations, there was probable cause to arrest Harris.  Harris made no argument at the hearing about being "tricked" into revealing the gun.

At trial Officer Thelen repeated his suppression-hearing testimony, and a backup officer corroborated Thelen's version of events.  In addition, ATF Special Agent Christopher Labno testified about the written statement he obtained from Harris.  Harris related to Labno that he and Pettis were arrested together and that afterward he told Thelen about the gun in one of his blue shoes back at his apartment.  According to Labno, Harris elaborated that he bought the gun the day before for $50 from a woman named Poochie.  He explained in some detail his knowledge of Poochie's business and said he hoped prosecutors would give him a break for turning in the gun.  Labno took notes and drafted a statement for Harris's review; Harris read it, made and initialed changes on both pages, and signed the first page.  Later that same day, Labno noticed that Harris inadvertently failed to sign the second page.  He returned to the station and asked Harris to again review and sign the statement.  Harris complied without objection.  Harris's statement includes the following:

> Police officers caught me and my friend at his drug spot . . . and because I didn't want to go to the penitentiary I told Officer Thelen about a gun I had at home.  I told him I could get a gun if he would help me out.  I told Officer Thelen that my mom would get him the gun if he went to my place at 803 S. California.  The gun was in a blue-shoe against the wall . . . . [T]he gun I gave the Chicago Police tonight, I had bought for $50.00 USC from a girl named "Poochie" . . . . I bought this gun <u>strictly</u> for protection.  The gun was a .380 semi-automatic pistol . . . . Nobody threatened me or promised me anything to make this statement, except that my cooperation would be made known to the prosecutors and I am making this statement because I want to tell the truth in the hope that my help will be taken into consideration in regard to my circumstances.

Labno testified that he told Harris he could not promise him a break in exchange for his statement.

The government also presented unchallenged testimony that the gun was manufactured in Spain and therefore traveled in interstate commerce, and Harris stipulated that he was a felon.

Harris did not testify at trial.  He called his mother who testified that she and Harris moved into their one-room apartment about three weeks before his arrest.  The previous occupants, she said, had left things behind, including a gun in a blue gym shoe.  On the morning of his arrest, Ms. Harris told her son about finding the gun, and he advised her not to throw it away because children might find it.  That night, she continued, police officers let themselves into the apartment building using her son's keys, woke her from her sleep, and told her, "[W]e came at a gun, . . . if we get this gun, we'll let them go."  Ms. Harris retrieved the shoe containing the gun from the closet and gave it to the officers.  She testified that she never told Harris where the gun was hidden.

The day after the jury returned its verdicts, Harris moved for a judgment of acquittal.  *See* Fed. R. Crim. P. 29(c).  Six days later, he moved for a new trial.  *See* Fed. R. Crim. P. 33.  The district court denied both motions.

On appeal Harris abandons his argument that police lacked probable cause to arrest him; he now contends that his statements revealing that he possessed a gun were made involuntarily due to Officer Thelen's combined threat to plant evidence and false promise that Harris would go free if he produced a gun.  *See Hadley v. Williams*, 368 F.3d 747, 749 (7th Cir. 2004) (noting that extracting confession through false promise to set defendant free renders it involuntary).  It follows, Harris argues, that the gun, as the fruit of his involuntary statements, must be suppressed.  *See Chavez v. Martinez*, 538 U.S. 760, 769 (2003); *United States ex rel. Hudson v. Cannon*, 529 F.2d 890, 893 (7th Cir. 1976).  This contention was not presented to the district court.

When a criminal appellant raises a suppression argument for the first time on appeal and there is no indication he intentionally failed to raise it previously, the issue is forfeited and subject only to review for plain error.  Fed. R. Crim. P. 12(b), (e); *United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005).  In this case, plain error review is appropriate because the record gives no indication that Harris consciously omitted his voluntariness argument in the district court.  A threshold argument for establishing plain error, however, is a showing of good cause for failing to make a timely motion to suppress, *see id.* at 730-31, and Harris has not  offered a reason for omitting this new contention from his motion to suppress.  That is reason enough to reject his voluntariness argument.  *Id.* at 731; *United States v. Davenport*, 986 F.2d 1047, 1048 (7th Cir. 1993).

Moreover, Harris presents his voluntariness argument as a credibility dispute.  He contends that the district court erred when it rejected his account and

accepted Officer Thelen's version of how the police learned about the gun. But, even if Harris had demonstrated good cause, we will not disturb a district court's credibility determination unless it is completely without foundation. *See United States v. Huebner*, 356 F.3d 807, 812 (7th Cir. 2004).

The district court accepted Officer Thelen's suppression hearing testimony that he arrested Harris when he saw Harris engage in three separate drug sales with Pettis. The court, in turn, rejected Harris's testimony that he was innocently sitting on his friend's porch when Thelen handcuffed him for no reason and said the police had received a call about a man with gun. Although the district court was not asked to make an explicit finding as to the voluntariness of Harris's statements (because Harris waited until now to raise this issue), there is no reason to conclude that the court would have believed every other aspect of Thelen's account of events while simultaneously crediting Harris's testimony that Thelen "tricked" him into revealing his gun by threatening to plant evidence and falsely promising leniency. The district court did not believe Harris, and that is the answer to his argument.

Harris also argues that even with the admission of the gun the government's evidence was insufficient to support his conviction. Evidence supporting a conviction is sufficient if any rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Kapp*, 419 F.3d 666, 671 (7th Cir. 2005). In reviewing the trial evidence we draw all inferences and resolve all factual disputes in favor of the verdict. *Jackson*, 443 U.S. at 319; *Kapp*, 419 F.3d at 672.

Conviction under § 922(g)(1) requires proof of (1) knowing possession of a firearm (2) in or affecting commerce (3) after a felony conviction. 18 U.S.C. § 922(g)(1); *United States v. Allen*, 383 F.3d 644, 646-47 (7th Cir. 2004). Harris only disputes the possession element. He contends, citing his mother's testimony and ignoring the government's evidence, that he learned about the gun left behind by former residents but never exercised control over it. This argument is frivolous.

Possession may be either actual or constructive, exclusive or joint. *United States v. Gilbert*, 391 F.3d 882, 886 (7th Cir. 2004). Actual possession exists when a person knowingly maintains direct physical control over an object. *United States v. Lane,* 267 F.3d 715, 717 (7th Cir. 2001). Constructive possession exists when, although a person does not have actual possession, he has the power and intent to exercise control over an object either directly or through others. *United States v. Merritt*, 361 F.3d 1005, 1014 (7th Cir. 2004).

In this case Harris confessed orally and in writing that he bought the gun and could get it from the apartment he shared with his mother; police recovered the gun from his apartment. We must assume that the jury rejected Rosie Harris's testimony about the source of the gun and accepted the government's evidence as to

Harris's confession. *See United States v. Morris*, 349 F.3d 1009, 1011-12, 1014 (7th Cir. 2003) (holding that constructive possession was proved where guns were seized from defendant's brother's house and, in statements to police, defendant said he lived with his brother, admitted owning the guns, and described in detail how he acquired them); *see also United States v. Fujii*, 301 F.3d 535, 541 (7th Cir. 2002) (holding that sufficient evidence existed to sustain defendant's conviction where his signed, sworn statement was corroborated by independent, extrinsic evidence). Indeed, even Harris admits in his opening brief that "it is true that the evidence (namely the affidavit) would suffice to demonstrate constructive possession."

AFFIRMED.