NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 27, 2007
Decided March 7, 2007

**Before**

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-2006

|  |  |
|---|---|
| | Appeal from the United States |
| UNITED STATES OF AMERICA, | District Court for the Northern |
| *Plaintiff-Appellee,* | District of Illinois, Eastern Division. |
| | |
| *v.* | No. 04 CR 662 |
| | |
| RUBEN M. GUTIERREZ, | Robert W. Gettleman, |
| *Defendant-Appellant.* | *Judge.* |

**ORDER**

With Ruben Gutierrez's consent, law enforcement agents performed searches that turned up cocaine in both his shirt pocket and his kitchen cabinet. He moved to suppress the drugs on the ground that his consent was not knowing or voluntary. The district court denied his motion, and after a jury trial he was convicted of possession with intent to distribute cocaine. 21 U.S.C. § 841(a)(1). Gutierrez now challenges the denial of his motion to suppress and renews his contention that his consent was invalid. We affirm.

Agents Sean Hartnett and Andrew Wessner, both with the Department of Homeland Security in the division of Immigration and Customs Enforcement, along

with two other agents, were conducting surveillance on a particular apartment building in Melrose Park, Illinois. At 2:00 p.m. Gutierrez pulled up in his minivan and entered the building. The agents did not have a warrant, so they waited in their cars until 5:00 p.m., when they decided to make contact.

The sun was still shining when Agent Harnett, along with another agent, went to the door. Agent Wessner and the fourth agent stood to the side of the door, out of sight. The agents were wearing bulletproof vests, each affixed with a badge that read "U.S. Customs," and all four agents had their weapons holstered. After Agent Hartnett knocked and announced, "police," Gutierrez appeared at the door. Agent Hartnett asked for permission to speak with Gutierrez, who replied, "Yeah, come on in," opened the door, and retreated down the hallway to the living room. Agent Hartnett followed, while the other three agents entered and performed a protective sweep of the apartment.

As he entered the living room, Agent Hartnett informed Gutierrez in English that he and his associates were federal agents and that the apartment was the subject of an investigation. Continuing in English, Agent Hartnett asked whether Gutierrez had any weapons or contraband on him. Gutierrez said no, and so Agent Hartnett asked if he could search him. Gutierrez responded "Yeah" or "Yeah sure," and then raised his arms out to his sides "like an airplane."

While performing the search, Agent Hartnett felt an object in one of Gutierrez's shirt pockets and asked him what it was. "Cocaine," Gutierrez replied. Agent Hartnett retrieved the object, which laboratory tests later confirmed was cocaine, and then handcuffed Gutierrez to finish searching him. Hartnett explained at the suppression hearing that he handcuffed Gutierrez because he figured that if Gutierrez had lied about not having cocaine, he might have been lying about not having weapons as well. Finding no weapons, Agent Hartnett removed the handcuffs and sat Gutierrez on the couch.

By this point, Agent Wessner had rejoined Agent Hartnett in the living room, where the two obtained Gutierrez's consent to a search of his residence. Agent Hartnett retrieved a Spanish-language, consent-to-search form that he had used in previous investigations. Gutierrez read it, then turned to Agent Wessner and said in Spanish "You already searched." Hartnett explained that a protective sweep of the apartment had been conducted but not a search. Hartnett went on to explain to Gutierrez that the discovery of cocaine in his shirt pocket would be sufficient to contact the U.S. Attorney's Office and prepare a search-warrant application to search the residence. With that information, Gutierrez signed the form; in the subsequent search, agents found two bricks of cocaine wrapped in separate packaging, one of which had been sliced open, in the kitchen cabinets. Throughout this encounter, as Agent Hartnett described it, Gutierrez's demeanor was "calm and

cooperative," though Agent Wessner suggested that Gutierrez seemed "stressed" at times.

Although Gutierrez did not testify at the suppression hearing, the defense did call Carlos Mendoza, a court reporter who the parties stipulated was an expert in Spanish-English translation. Mendoza analyzed the consent form and concluded that it was poorly translated from English to Spanish. On cross-examination, Mendoza admitted that his analysis of the form was purely based on the words as they appeared on paper rather than on the context in which the form was presented, and that despite the errors, he could translate the document roughly to mean consent to search.

The district court credited the testimony of Agents Hartnett and Wesser and determined that the two searches were consensual. The court also credited Mendoza's testimony, remarked that the consent form probably was poorly translated, and advised the government to have that problem corrected. But the judge did not think there was any question about what the form meant, for as he said, "it's obviously a consent to search form." The judge then denied the motion to suppress. Gutierrez was convicted after a jury trial and sentenced to 70 months' imprisonment to be followed by a four-year term of supervised release.

Gutierrez argues for the first time on appeal that his consent was tainted by the fact that the agents subjected him to an illegal detention. Specifically, he says that the encounter had become a nonconsensual "seizure" by the time the agents performed the pat-down search. In an effort to show the intrusiveness of the encounter, Gutierrez emphasizes that he was approached by four agents wearing "identifying police logos on their clothes" in the "late afternoon." With those facts, says Gutierrez, his case is like *United States v. Jerez*, 108 F.3d 684 (7th Cir. 1997), in which this court invalidated consent that was given immediately following an illegal seizure. The government responds that this argument should be reviewed for plain error because it was never raised in the district court, and that in any event, there was no detention at all until the officers found cocaine in Gutierrez's shirt pocket and handcuffed him.

The government is correct that Gutierrez never raised the illegality of his detention in the district court, rendering this court's review for plain error. *See United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005). In reviewing the argument, we ask whether "a reasonable person would feel free to decline the officers' request or otherwise terminate the encounter." *Jerez*, 108 F.3d at 689 (*quoting Florida v. Bostick*, 501 U.S. 429, 436 (1991)). Here, the agents testified that they approached Gutierrez's apartment while the sun was still out, gave no commands, did not draw their guns, and applied no pressure to gain entry. Despite Gutierrez's attempt to recast these facts as more akin to those in *Jerez*, we find that

a reasonable person in Gutierrez's circumstances would have felt free to terminate the encounter. Thus, Gutierrez has not met his burden of showing a plain error.

Gutierrez also argues that the district court erred in finding that he voluntarily consented to the two searches. He says that the pat-down search was involuntary because the agents failed to inform him of his constitutional right to refuse consent. But the advisement of rights is just one of a totality of circumstances that courts take into account in determining the voluntariness of consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *United States v. LaGrone*, 43 F.3d 332, 333-34 (7th Cir. 1994). Further, informing a suspect of his right to refuse consent is not required for a valid consent because "it would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning." *Schneckloth*, 412 U.S. at 231, 232-33. The ultimate question is whether, under the totality of the circumstances, the consent appeared voluntary to a reasonable officer. *United States v. Grap*, 403 F.3d 439, 444 (7th Cir. 2005). Here, the testimony about Gutierrez's "calm and cooperative" demeanor, together with his immediate agreement to be searched, plus the fact that he assumed an "airplane" stance without any prompting from the agent, provided the district court with enough evidence to conclude that Gutierrez voluntarily consented to the search.

Gutierrez also argues that his next consent, to the search of his residence, was not voluntary. As he sees it, this consent was involuntary because (1) he was not given *Miranda* warnings, (2) Agent Hartnett threatened to obtain a warrant, and (3) the consent form was defective. But *Miranda* warnings are not required for a consent to search to be deemed voluntary, *see United States v. Renken*, No. 05-2838, 2007 WL 255383, *3-*4 (7th Cir. Jan. 31, 2007), and while "baseless threats" to obtain a warrant can invalidate consent, *see United States v. White*, 979 F.2d 539, 542 (7th Cir. 1992), the threat here was anything but; agents had just found cocaine on Gutierrez's person and could readily have obtained a warrant based on that discovery.

Gutierrez's argument about the consent form is less understandable. He calls the form "defective" and seems to suggest that he did not understand the consent form because it was poorly translated. Yet he offers no reason why the district court was wrong to conclude that given the context of the encounter, he must have understood that the agents were asking for permission to search. Gutierrez's response to the form—"You already searched"—alone supports the district court's conclusion that Gutierrez knew and understood the effect of signing the form.

Gutierrez finally seems to allege, for the first time on appeal, that his language difficulty is not with Spanish but with English, and that this difficulty allowed the police to pressure him to sign the consent form. But at the suppression

hearing, counsel urged that Gutierrez did not know *Spanish* well enough to understand the consent form. Moreover, the district court asked Gutierrez at two separate proceedings whether he spoke English, and he replied that he did and that he did not need an interpreter.

AFFIRMED.