In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-1770

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MCRAY BRIGHT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 342—**Joan Humphrey Lefkow**, *Judge.*

ARGUED APRIL 16, 2009—DECIDED AUGUST 20, 2009

Before EASTERBROOK, *Chief Judge,* and BAUER and
MANION, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury convicted McRay Bright
of violating various federal statutes, all having to do
with a bank robbery. The district court sentenced him to
181 months' imprisonment. On appeal, Bright challenges
the admission of an eye-witness identification, from a six-
person photograph array. Bright also argues that the
district court erred by allowing the introduction of two

pieces of unduly prejudicial guilt-by-association evidence. Lastly, he argues that the district court erred when it applied an obstruction of justice enhancement based on an attempted escape. For the following reasons, we affirm.

## I. BACKGROUND

On March 28, 2006, three armed men robbed a LaSalle Bank in Chicago of approximately $83,584. Several bank employees were threatened with guns, corralled behind the teller counter and ordered to stuff the vault's holdings into duffel bags. One bank teller, Jessica Lopez, was told at gun-point to hold open the bags while another employee emptied the teller drawers' cash into it. The three men fled the scene with their takings before the police arrived.

The FBI questioned the witnesses, including Lopez, manager Thanh Huynh-Staley, and security guard Larry Williams. Lopez informed the FBI that the youngest robber was a light or medium complected African American. Lopez testified that all African Americans resembled one another, "see, I'm not African American. . . . So to me everyone is the same." Huynh-Staley, and several other witnesses, also described the same assailant as having a lighter skin tone.

Roughly a month later, a cooperating witness informed the FBI that Bright had participated in the LaSalle Bank robbery. The FBI assembled a six-man photograph array including Bright's photograph and five

other photographs with similar physical characteristics. According to Bright, his photograph was one of only two that featured light complected men, while the other four photographs were of dark complected African Americans.

The FBI asked Lopez and Williams if they could identify any of the bank robbers from the photo array. Williams could not; Lopez noted that the photographs did not allow her to see the individuals' height and build. Nonetheless, Lopez identified Bright as one of the three men involved in the robbery, stating, "it is this one. Look at the eyes. I just know it is this one." (Later at trial, "the eyes was what made me very certain that [Bright's photograph] was the one. . . . [I]f you have something that bad happen to you . . . [y]ou can never forget that person's eyes.") Lopez further described the array as consisting of four dark complected men and two light complected men.

Bright was arrested on May 15, 2006. The next day, the FBI went to the Chicago Police Department station, where Bright had been held for a day, to transfer him to federal custody. While his hands were cuffed behind his back, and waiting in the station's hallway, Bright claims that an FBI agent responded to one of his questions with "shut the fuck up." Upon hearing this, Bright made a break for it; he sprinted down the hallway and through two sets of the station's doors into the parking lot, where he was apprehended.

The FBI invited Huynh-Staley and Williams to identify the bank robbers from an in-person lineup; Bright

was not identified. Huynh-Staley told the FBI that a couple of days later, she recognized Bright from the lineup but had been unsure at the time. Because Bright's counsel had not been informed of this statement, the government agreed to not raise this late identification during the testimony of the FBI agent. Nonetheless, at trial, Huynh-Staley and Williams each identified Bright as one of the three men involved in the LaSalle Bank robbery.

After the in-person lineup, where Bright was not identified, the FBI arrested Brandon Lee, who admitted to being one of the three bank robbers. Lee informed the FBI that Bright was one of his co-conspirators in the bank robbery and agreed to testify against him.

The government prosecuted Bright for: (I) Conspiracy to Commit Bank Robbery, 18 U.S.C. § 371, (II) Bank Robbery, 18 U.S.C. § 2113(a), (III) Brandishing a Firearm in Furtherance of a Crime of Violence, 18 U.S.C. § 924(c)(1)(A)(ii), and, based on his attempted flight from the police station, (IV) Attempting to Escape, 18 U.S.C. § 751(a).

At trial, Lopez, Huynh-Staley, Williams and Lee all identified Bright as one of the three bank robbers. The government also called one Cheri Avery to testify about statements made in her presence by one of Bright's close friends, Antonio Harris. According to Avery, Harris boasted about robbing a bank to Bright; Bright responded that it sounded like something he would like to do. The government also introduced birth certificate evidence linking Bright to his aunt, Ruby Parker,

formerly a senior teller at the bank that was robbed. A government witness testified that Parker would have known that an armored delivery truck would have been making a delivery to the bank on the day that it was robbed. Bright had moved to exclude the birth records in limine on relevancy and prejudicial grounds; the district court denied the motion and admitted the evidence, over Bright's objection, at trial.

At trial, the jury reported to the district court that it was deadlocked because it could not reconcile two instructions. After the district court clarified the instructions, the jury returned a guilty verdict on all counts.

During sentencing, the government argued that the district court should apply a two-level enhancement to Bright's base offense level for the obstruction of justice, both for false statements made after arrest and his attempting to escape conviction. Bright argued that his age, unfortunate childhood experience and the profanity used by the FBI agent sparked his flight from the hallway. The district court rejected Bright's argument and said that "[i]t's not necessary to get into a discussion of the various incidents of making false statements in light of the conviction for the escape, which . . . is a clear enhancement under . . . [U.S.S.G. § 3C1.1], obstruction of justice."

With this enhancement, and after Bright apologized for his actions, the district court sentenced Bright to 181 months' imprisonment. This timely appeal followed.

## II. DISCUSSION

Bright argues that the district court erroneously allowed Lopez's unreliable identification from the suggestive photo array, and permitting prejudicial guilt-by-association evidence by allowing Avery to testify about Harris's statements, and allowing the birth records linking Bright to Parker. Bright also argues that the district court erroneously enhanced his sentence for obstructing justice.

### A. Lopez's Identification

We begin by addressing whether the district court erred when it admitted Lopez's identification of Bright. Bright claims that Lopez's identification was based on a flawed, suggestive photo array prepared by the FBI, and its admission violated his due process rights. According to Bright, the six-man array was essentially an impermissible, two-man array; the array included four photographs of dark complected African American men, and two medium complected men, one of which was Bright. Bright points out that Lopez had stated that the assailant was "medium" complected and was of a lighter skin tone than, in her view, a typical African American, and therefore, the array was of two men, not six. Moreover, Bright calls attention to Lopez's racially-biased statement that all African Americans looked alike to her.

Bright failed to move for the suppression of Lopez's identification before trial, and failed to object to its admis-

sion at trial. *See* Fed. R. Crim. P. 12(b)(3). Under Rule 12, this failure waives the argument. *See* Fed. R. Crim. P. 12(e). We therefore review the objection to Lopez's identification under a plain error standard. *See United States v. Johnson*, 415 F.3d 728, 730 (7th Cir. 2005). Bright now argues that the failure to file a suppression motion may be curable by a showing of good cause. He claims that good cause can be shown by the "surprise avalanche of undisclosed positive identifications," in reference to Huynh-Staley's and Williams's positive in-court identifications after they had failed to select Bright out of a line-up, including Huynh-Staley's identification days after the line-up. However, Bright did not argue good cause at trial; indeed, he did not object. *See id.* at 730-31. Moreover, we find no substance to this argument since it does not explain why Bright failed to move for the suppression of Lopez's identification, not Huynh-Staley's or Williams's. It was not the district court's duty to raise the issue sua sponte. We find that Rule 12 mandates that Bright must have filed a suppression motion before his trial or risk losing it and, because he did not, it cannot be said that the district court committed any error, let alone plain error, when it followed the federal rules as written.

## B. Rule 403 Evidence

Bright also argues that Federal Rule of Evidence 403 should have precluded the admission of two pieces of highly prejudicial evidence—Avery's testimony regarding Harris's prior bank robbery and the birth certifi-

cates linking Bright to his aunt Parker—because the evidence invited the jury to infer Bright's guilt based on the actions of his associates. Rule 403 requires that a district court determine whether the prejudicial effect of admitting such evidence substantially outweighs its probative value and thereby renders it inadmissible. *See* Fed. R. Evid. 403. Because this concerns an evidentiary ruling by the district court, we review the decision for an abuse of discretion, disturbing it only if no reasonable person could agree. *United States v. Toro*, 359 F.3d 879, 884-85 (7th Cir. 2004).

First, according to Bright, the government's use of Avery's testimony was a prejudicial attempt to taint Bright's character through his association with admitted bank robber Harris. The Rule does not exclude detrimental relevant evidence, only evidence where its unfair prejudice substantially outweighs its relevancy. *See United States v. Perkins*, 548 F.3d 510, 515 (7th Cir. 2008) (citations omitted). The government argues that the district court did not abuse its discretion by allowing the statements for contextual purposes. Avery testified that, while shooting dice with Harris and Bright, Harris had boasted about a bank robbery he had committed, to which Bright admitted, "Sound [sic] like something I want to do." Avery testified as to the conversation between Harris and Bright and, because Harris died shortly after the bank robbery, the testimony provided context for Bright's admission. The statement was not unduly prejudicial and the district court did not abuse its discretion by allowing the statement into evidence.

Second, Bright argues that the district court abused its discretion when it allowed birth certificate evidence linking Bright to his aunt, ex-bank employee Parker. He claims that the evidence was highly prejudicial because the jury could infer Bright's guilt based on his association with Parker, and her knowledge of the armored truck delivery schedule. Again, the district court found, and we agree, that this evidence, although prejudicial, does not rise to the elevated standard of substantially outweighing its probative value since it was probative as to why Bright selected that particular LaSalle Bank. The evidence was probative to circumstantially show that Bright knew that an armored truck delivery was scheduled on the same day the bank was robbed. The district court's decision to admit the evidence was not an abuse of discretion.

### C.   Obstruction of Justice Enhancement

Finally, Bright argues that the district court erroneously enhanced his sentence for obstructing justice, U.S.S.G. § 3C.1.1, based on his conviction for attempting to escape. *See* 18 U.S.C. § 751(a). "We review the sentencing court's factual determinations regarding obstruction of justice for clear error, but review interpretations of the Sentencing Guidelines *de novo*." *United States v. Draves*, 103 F.3d 1328, 1337 (7th Cir. 1997) (citations omitted) (emphasis in original). In this inquiry, we afford "due deference" to the district court's application of the Guidelines to the facts since the court's determination on whether a defendant obstructed justice under § 3C1.1 is a factual finding, upheld unless clearly erroneous. *Id*.

The district court, according to Bright, committed error when it found that a conviction for attempted escape was sufficient to require a two-level base level enhancement for obstruction of justice. In particular, Bright claims that the district court failed to make the requisite mens rea finding in enhancing the sentence. The obstruction of justice enhancement requires that a defendant willfully obstruct or impede, or attempt to obstruct or impede the administration of justice, *see* U.S.S.G. § 3C1.1, and it is this willful intent finding, Bright argues, that the district court failed to make. Rather, the district court used Bright's attempted escape conviction, which required only that Bright knowingly attempted to escape from custody, as the necessary mens rea for the enhancement. This is the heart of Bright's challenge: that the district court used a "knowingly" finding rather than a "willful" one in the enhancement.

We have held that willful intent, for § 3C1.1 purposes, cannot be presumed by the unauthorized flight of a handcuffed defendant from the back of an officer's car. *See Draves*, 103 F.3d at 1336-37 (7th Cir. 1997). In *Draves*, we entertained similar arguments to those that Bright is now raising—namely, that Bright's individual circumstances align more with an instinctual, reactionary flight (which is not sufficient for the enhancement) rather than a willful intent to escape custody (which is sufficient). Bright claims that he has the mental and emotional capacity of a teenager and, coupled with the FBI's verbal abuse, his flight was instinctive and spontaneous. Thus, he lacked, and the district court never found,

the deliberate and willful mens rea required for the enhancement.

The problem with this line of reasoning is that Bright was not fleeing arrest but custody. Application note 4(e) states that "escaping or attempting to escape from custody" justifies the enhancement and here, Bright attempted to escape custody. Bright was arrested and spent the night behind bars. The next day, cuffed and awaiting transfer, under minimal supervision, in federal custody in the hallway, Bright attempted to escape. We must emphasize that he had already spent a day in jail and his attempted escape was *from custody, not arrest*. Although application note 5(d) states that "avoiding or fleeing from arrest" ordinarily does not justify the enhancement, exemplified by the panicked situation in *Draves,* Bright's flight was a calculated evasion from custody when his chances for escape were the greatest.

These circumstances established that Bright willfully and intentionally attempted to obstruct justice by attempting to escape custody, sufficient to warrant the enhancement.

## III. CONCLUSION

Accordingly, we AFFIRM Bright's convictions and sentence.