2013 COA 140

### The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

### Michelle L. ZADRA, Defendant–Appellant.

### Court of Appeals No. 10CA1207

Colorado Court of Appeals,
Div. III.

Announced October 24, 2013

Rehearing Denied December 12, 2013

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Cox Baker & Page, LLC, Anne Whalen Gill, Castle Rock, Colorado, for Defendant–Appellant.

Opinion by JUDGE J. JONES

¶ 1 Defendant, Michelle L. Zadra, appeals the judgment of conviction entered on jury verdicts finding her guilty of three counts of official misconduct, one count of false reporting, and seven counts of perjury. She also appeals her sentence.

¶ 2 Defendant's contentions fail, with one exception. We conclude that two of defendant's perjury convictions violate the constitutional prohibition against double jeopardy. That is because three of the perjury convictions are based on substantially identical statements, given to the same interrogator at the same proceeding. Accordingly, we affirm defendant's convictions on all counts except counts 9 and 10; the convictions on those counts merge into the conviction on count 6. We also affirm the sentences, except for the sentences on counts 9 and 10, which we vacate; the total sentence of incarceration is therefore reduced from twenty-eight days to twenty-two.

## I. Background

¶ 3 Defendant served as a captain in the Gunnison County Sheriff's Office, where she supervised the county jail. According to the prosecution's evidence, a jail employee told inmate Joseph Stromayer that jail staff members had been listening to his telephone conversations with his attorney. Mr. Stromayer complained about the eavesdropping to defendant and to his attorney, Gary Fielder. Mr. Fielder filed a motion to dismiss charges against Mr. Stromayer, alleging that jail employees were monitoring attorney-client phone calls. Defendant testified at a hearing on the motion (Stromayer hearing) that she was the only jail employee with the ability to monitor inmates' phone calls and that she had never knowingly listened to a phone conversation between Mr. Stromayer and his attorney.

¶ 4 Subsequently, the Colorado Bureau of Investigation (CBI) launched an investigation into concerns about other matters at the Gunnison County jail. The scope of the investigation eventually expanded to include the alleged monitoring of inmate phone conversations and defendant's testimony at the Stromayer hearing about phone conversation monitoring. Agents interrogated defendant at least twice after she became a suspect. During the second interrogation, defendant confessed that she had not been forthright during her testimony at the Stromayer hearing.

¶ 5 About six months later, the People charged defendant with three counts of official misconduct, one count of false reporting, and nine counts of perjury based on her testimony at the Stromayer hearing. At the end of the trial, the district court dismissed two perjury counts. The jury convicted defendant of the remaining eleven counts. The court sentenced defendant to a term of twenty-eight days in jail (including three days on each of the perjury convictions, to be served consecutively), plus six years of supervised probation.

## II. Discussion

¶ 6 On appeal, defendant contends that the district court erred by (1) denying her motions to dismiss the case as a discovery sanction; (2) denying her motion to suppress statements she made to CBI agents; (3) allowing conviction on insufficient evidence; (4) submitting improper verdict forms to the jury; (5) facilitating miscellaneous errors at trial; and (6) failing to merge the perjury convictions or to order the sentences thereon to be served concurrently. We address each contention in turn.

### A. Discovery Violations

¶ 7 Defendant first contends that the district court erred by denying her counsel's motions to dismiss the case as a sanction for the prosecution's discovery violations. We are not persuaded.

#### 1. Background

¶ 8 Discovery did not proceed smoothly in this case. The prosecution produced roughly

2,000 pages, along with audio-visual material, less than a month before trial. Defendant's counsel moved for dismissal as a discovery sanction.

¶ 9 The district court, in its written order on the motion, admonished the prosecutor for having failed to produce the recorded CBI interrogation of defendant until the morning of the suppression hearing: "This clearly violates the obligations of the District Attorney under Rule 16." Nevertheless, because defendant's counsel had known of the recording and had an opportunity to review it, the court concluded that it had "not been shown how there has been any prejudice and finds none."

¶ 10 The court reset the trial date to allow the defense an additional two months to prepare, and in effect created a rebuttable presumption that discovery produced within a month of the original trial date would be excluded.

¶ 11 The court rejected defendant's other claims of discovery violations, finding:

- No violation for failing to replace an uncertified transcript of the Stromayer hearing with a certified transcript, because the differences were minimal;
- No violation for the late endorsement of a telephone company employee as a witness, because that witness was simply replacing a previously designated employee from the predecessor corporation; and
- No violation for failing to produce recordings of the alleged attorney-client phone conversations, because the prosecutor was not authorized to release them until the court had ruled on the issue of privilege.

¶ 12 Defendant's counsel again moved for dismissal as a discovery sanction on the eve of trial, based on the prosecution's delayed production of the recordings of attorney-client phone conversations. The court denied this second motion to dismiss, apparently because once the district court had allowed the prosecutor to release the recordings, the

prosecutor had complied promptly with the court's order.

¶ 13 Another discovery dispute arose on the final day of trial during the testimony of CBI Agent Jack Haynes. Defendant's counsel objected that Agent Haynes seemed to be testifying from his knowledge of defendant's handwritten notes on details of phone conversations she had monitored, but that the prosecutor had not produced any such notes in discovery. The court denied defendant's counsel's oral and written motions to dismiss for the late production of the handwritten notes, but suspended Agent Haynes' testimony until he could retrieve the notes from his office. Counsel reviewed the notes before cross-examination concluded. The court also prohibited the prosecution from using defendant's notes as an exhibit—even though they apparently recorded details from attorney-client phone conversations, and even though the court allowed defendant's counsel to use the notes in cross-examination.[1]

2. Standard of Review and Applicable Law

 ¶ 14 We review a district court's ruling on discovery sanctions for an abuse of discretion, and we will not disturb that ruling on appeal unless it was manifestly arbitrary, unreasonable, or unfair. *People v. Lee*, 18 P.3d 192, 196 (Colo.2001); *People v. Moore*, 226 P.3d 1076, 1092 (Colo.App.2009) ("Because of the multiplicity of considerations involved and the uniqueness of each case, great deference is owed to trial courts in this regard....").

 ¶ 15 The district court has broad discretion in determining the proper sanction for a Crim. P. 16 violation. *People v. Cevallos–Acosta*, 140 P.3d 116, 125 (Colo.App. 2005). Discovery sanctions serve the dual purposes of protecting the integrity of the truth-finding process and deterring prosecutorial misconduct. *People v. Dist. Court*, 808 P.2d 831, 836 (Colo.1991). A district court should account for these purposes by imposing the least severe sanction that will ensure full compliance with the court's discovery

---

1. On cross-examination, Agent Haynes testified that the distinctive language he repeated came from unidentified phone conversations, not from

defendant's handwritten notes or the attorney-client phone conversation to which defendant's notes pertained.

orders and protect the defendant's right to due process. *Id.* at 836–37.

¶ 16 Therefore, a district court determining appropriate sanctions for a discovery violation should consider (1) the reason for the delay; (2) any prejudice a party suffered because of the delay; and (3) the feasibility of curing any prejudice through a continuance or recess during trial. *Lee*, 18 P.3d at 196.

¶ 17 Dismissal is a drastic sanction, typically reserved for willful misconduct. *People v. Daley*, 97 P.3d 295, 298 (Colo.App. 2004) ("In the absence of willful misconduct, dismissal as a sanction for a discovery violation is usually beyond the discretion of the trial court."); *see also People v. Thurman*, 787 P.2d 646, 655 (Colo.1990) (prosecution steadfastly refused to release informant information despite a court order); *People v. Alberico*, 817 P.2d 573, 575–76 (Colo.App. 1991) (prosecution failed to share victim interviews that were materially inconsistent with victim's testimony at trial until after the prosecution's case-in-chief).

### 3. Analysis

¶ 18 We assume for the purpose of this analysis that the prosecutor violated Crim. P. 16 in the two instances defendant identifies. But the district court did not find, and the record does not show, that the violations were willful. Rather, the record shows that the prosecutor shared the interrogation recording soon after obtaining it from investigators and was not even aware of the handwritten notes until Agent Haynes took the stand at trial.

¶ 19 Further, defendant's opening brief does not even allege, much less identify, any prejudice stemming from the late production of information, and her reply brief includes only a conclusory assertion that the prejudice should have been "obvious."

¶ 20 We do not perceive any obvious prejudice that could have changed the outcome of the trial. Once the district court reset the trial date, defendant's counsel had more than sixty days to review the interrogation recording. With respect to the handwritten notes, defendant had written them and had given them to investigators; they were no surprise to defendant. Defendant's counsel obtained the notes in time to briefly review them and use them in the cross-examination of Agent Haynes. The notes were not exculpatory. To the contrary, they were evidence that defendant had listened to an attorney-client phone conversation. Absent a showing of prejudice, there is no reversible error. *See Salazar v. People*, 870 P.2d 1215, 1220 (Colo. 1994) ("Failure to comply with discovery rules is not reversible error absent a demonstration of prejudice to the defendant.").

¶ 21 Last, the court attempted to cure any possible prejudice by giving defendant's counsel sixty days before trial to review the late-produced recording and a recess during trial to review the handwritten notes. We are not persuaded that these steps were insufficient to remedy any potential prejudice to defendant arising from the prosecution's belated production of evidence.

### B. Motion to Suppress

¶ 22 Defendant next contends that the district court erred by denying her motion to suppress statements she made in two interrogations because (1) she was subjected to custodial interrogation without a proper *Miranda* advisement and (2) her statements were not voluntary. We are not persuaded.

### 1. Standard of Review

¶ 23 A challenge to a suppression order presents a mixed question of law and fact. *People v. Broder*, 222 P.3d 323, 326 (Colo. 2010). We defer to the district court's factual findings if they are supported by the record, but review its legal conclusions de novo. *Id.*; *People v. King*, 292 P.3d 959, 961 (Colo. App.2011).

### 2. Custody

¶ 24 "*Miranda* protections only apply when a suspect is subject to both custody and interrogation." *Effland v. People*, 240 P.3d 868, 873 (Colo.2010). "The fundamental inquiry in determining whether a suspect is in custody for purposes of *Miranda* is whether a reasonable person in the suspect's position would believe himself to be deprived

of his freedom of action to the degree associated with a formal arrest." *Mumford v. People*, 2012 CO 2, ¶ 13, 270 P.3d 953 (quotation marks omitted). This is an objective determination, requiring consideration of the totality of the circumstances surrounding the interrogation. *Id.*; *see also People v. Allman*, 2012 COA 212, ¶ 48, 321 P.3d 557, 2012 WL 6055566. Such circumstances include, but are not limited to (1) the time, place, and purpose of the encounter; (2) the people present during the interrogation; (3) the words spoken by the law enforcement agent to the defendant; (4) the agent's tone of voice and demeanor; (5) the length and mood of the interrogation; (6) whether agents restrained the defendant or limited her movement during the interrogation; (7) the agent's response to questions asked by the defendant; (8) whether the agent gave the defendant directions during the interrogation; and (9) the defendant's response (verbal or nonverbal) to such directions. No single factor is dispositive. *Mumford*, ¶¶ 13–14, 270 P.3d 953 (citing *People v. Matheny*, 46 P.3d 453, 465–66 (Colo.2002)).

■ ¶ 25 The fact that an interview occurs within a secure police station, in itself, does not establish custody. *See Matheny*, 46 P.3d at 467–68 ("*Miranda* warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect.'" (ultimately quoting in part *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977))); *People v. Thiret*, 685 P.2d 193, 203–04 (Colo.1984) (interrogation not custodial when the defendant submitted to polygraph examination and was interviewed at the police station following the exam, but was free to leave at any time).

■ ¶ 26 Defendant's motion to suppress challenged only the forty-five-minute interrogation by Agent Haynes on February 17, 2009, which occurred after her polygraph test. We therefore limit our review to that interrogation. *See People v. Allen*, 199 P.3d 33, 35 (Colo.App.2007) (declining to address the admissibility of statements the defendant did not challenge in the district court or in his opening brief on appeal); *People v. Salyer*, 80 P.3d 831, 835 (Colo.App.2003) (declin-

ing to consider grounds for suppressing statements that were not raised in the district court).

¶ 27 Following a hearing on the motion, the district court made the following findings of fact:

- Agent Haynes interrogated defendant mid-afternoon in the secure portion of the Gunnison Police Department station.

- The interview room was about eight feet by eight feet.

- Defendant knew the purpose of the meeting was to undergo a polygraph examination.

- The door of the interview room was never fully closed, and the secured portion of the station only locks people out, not in.

- Agent Haynes and Agent Micciche were present at the interview, but Agent Micciche left shortly after Agent Haynes entered. Agent Haynes was in plain clothes.

- Agent Haynes interrogated defendant for roughly forty-five minutes.

- Gunnison Police Officer Watts advised defendant, at least partially, of her rights on February 12; defendant consented in writing to the polygraph examination on February 17; Agent Haynes did not advise defendant of her rights on February 17.

- Agent Haynes spoke in a "fatherly conversational tone. There were neither threats, raised voices, nor promises." Agent Haynes emphasized the importance of telling the truth.

- Defendant cried several times during the interrogation.

- Near the end of the interrogation, Agent Haynes said, "I know you want to go and I'll let you go in just a little bit." The district court found that this comment did not mean defendant was unable to leave, but merely that Agent Haynes was about to finish questioning.

- Defendant asked at one point, late in the interview, "Am I in trouble?"

- Defendant was not physically restrained at any time, and there was no other limitation of movement.
- Agent Haynes did not give any directions to defendant.

¶ 28 These findings are supported by the record.[2] And though some of these facts might tend to indicate custody, considered as a whole the circumstances support the court's conclusion that defendant was not in custody. Defendant had met with Agent Haynes several times before. She voluntarily came to the police station, unescorted, knowing that she would take a polygraph exam. The interview was one-on-one. The tone of the agent's questioning was "fatherly." There was no intimidation or coercion. Defendant was not restrained and was free to leave at any time. Agent Haynes gave no directions to defendant. Defendant left unhindered and was not arrested until seven months later.

¶ 29 Given these facts, we conclude that a reasonable person in defendant's position would not have believed she was so deprived of freedom of action that the encounter amounted to a formal arrest.[3]

¶ 30 Because we conclude that the interrogation was not custodial, we need not address defendant's contentions that she was insufficiently advised of her *Miranda* rights and that she did not voluntarily, knowingly, and intelligently waive those rights.

### 3. Voluntariness

¶ 31 Defendant also argues that her statements were not voluntary. A voluntary statement is " 'the product of an essentially free and unconstrained choice by its maker.' " *Effland*, 240 P.3d at 877 (ultimately quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961)). A statement is involuntary, however, if coercive governmental conduct played a significant role in inducing the statement.

*Id.*; *People v. Gennings*, 808 P.2d 839, 843 (Colo.1991). Coercion includes physical abuse, threats, and exploitation of a person's weakness by psychological intimidation. *Gennings*, 808 P.2d at 843–44. However, "persuasion is not coercion." *Matheny*, 46 P.3d at 467. The fundamental inquiry is whether the defendant's will was overborne. *People v. Theander*, 2013 CO 15, ¶ 39, 295 P.3d 960; *Effland*, 240 P.3d at 877 (citing *Rogers v. Richmond*, 365 U.S. 534, 544, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961)).

¶ 32 We consider the totality of the circumstances surrounding the interrogation to determine whether a defendant's statement was voluntary. Relevant factors include (1) whether the defendant was in custody or was free to leave; (2) whether the agent gave a *Miranda* advisement to the defendant before the interrogation and the defendant thereafter waived her rights; (3) whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; (4) whether the challenged statement was volunteered or made in response to questioning; (5) whether the agent made overt or implied threats or promises; (6) the method and style of interrogation, as well as the length and setting; (7) the defendant's mental and physical condition during the interrogation; and (8) the defendant's education, employment status, and prior experience with law enforcement. *Gennings*, 808 P.2d at 844.

¶ 33 Even accepting as true, as defendant argues, that she did not receive a separate *Miranda* advisement from Agent Haynes before his interrogation, cried repeatedly during the interrogation, confessed in response to questioning, and was suffering from unrelated physical maladies, we conclude that these facts do not show that her will was overborne.

---

**2.** The video recording of the interview shows that the door to the room was closed for the first thirty minutes of the interview but not fully closed for the remainder of the interview.

**3.** At oral argument, defendant's counsel suggested that the fact defendant was employed by a law enforcement agency meant she had no choice but

to submit to interrogation. But, defendant did not raise this argument in the district court, no record was made concerning it, and defendant did not raise the argument in her briefs on appeal. Therefore, it is not properly before us. *Allen*, 199 P.3d at 35; *Salyer*, 80 P.3d at 835.

¶ 34 As made clear by the court's factual findings discussed above, Agent Haynes made no threats or promises, and did not raise his voice. Persuasion is not coercion, and Agent Haynes' "fatherly" tone and insistence that defendant tell the truth did not amount to psychological exploitation of any known weakness. Defendant voluntarily came to the police station unescorted, signed a written consent for the polygraph examination,[4] and was free to leave at any time. Defendant also had ample time to consult counsel in the four days between her police interviews; after her first interrogation it was clear she had become a suspect. Finally, defendant had served with the sheriff's department for two decades, and therefore had vast experience with law enforcement.

¶ 35 Considering the totality of the circumstances, we conclude that defendant's statements resulted from her free choice rather than governmental coercion.

### C. Sufficiency of the Evidence

¶ 36 Defendant next contends that there was insufficient evidence to support her convictions. We disagree.

¶ 37 We review the sufficiency of evidence to convict de novo. *People v. Fuentes–Espinoza,* 2013 COA 1, ¶ 42, —— P.3d ——, 2013 WL 174439. "When the sufficiency of the evidence is challenged on appeal, the reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt." *People v. McIntier,* 134 P.3d 467, 471 (Colo.App.2005).

¶ 38 Under section 18–8–502(1), C.R.S.2013, a person commits perjury "if in any official proceeding he knowingly makes a materially false statement, which he does not believe to be true, under an oath."[5] Thus, a statement must be both false and material to constitute perjury. *People v. Onorato,* 36 Colo.App. 178, 180, 538 P.2d 898, 899 (1975). A materially false statement is one "which could have affected the course or outcome of an official proceeding." § 18–8–501(1), C.R.S. 2013.

¶ 39 At trial, the prosecution presented overwhelming evidence that defendant's statements under oath at the Stromayer hearing were both false and material. Defendant testified at the Stromayer hearing that she had not knowingly listened to Mr. Stromayer's attorney-client phone conversations, and that she had not trained other jail employees to monitor the phones. The prosecution presented defendant's confession that these statements were not true. Further, Sergeant Melissa Rogers testified that defendant had trained her to monitor phone conversations. Investigators also presented evidence of defendant's extensive monitoring and recording of the disputed phone conversations, and Mr. Stromayer's attorney testified that many of these conversations included discussions of legal strategy. Many of these phone conversations were also played for the jurors.

¶ 40 Defendant's false statements were clearly material. The issue at the Stromayer hearing was whether jail employees had been listening to Mr. Stromayer's attorney-client phone conversations. Defendant's testimony at the Stromayer hearing pertained directly to that issue. Her false statements therefore could have affected the outcome of an official proceeding.

¶ 41 In sum, after examining the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have accepted the evidence presented as sufficient to support a finding of guilt beyond a reasonable doubt.

### D. Verdict Forms

¶ 42 Defendant next contends that the wording of the verdict forms assumed that

---

4. We note that the Statement of Consent to Polygraph Examination, bearing defendant's signature, explained the purpose of the exam as follows: "Agent Micciche has advised me that he is investigating the matter of: court statements regarding inmate phone monitoring." Defendant's claim that she was ambushed about the purpose

of the examination and interview therefore lacks support in the record.

5. The charges of official misconduct stemmed from the allegations of perjury.

she had committed the alleged acts giving rise to the charges, constituting plain error. We disagree.

### 1. Procedural Facts

¶ 43 The verdict form for Count 2 read, in relevant part:

I. We, the jury, find the defendant MICHELLE ZADRA, NOT GUILTY of FIRST DEGREE OFFICIAL MISCONDUCT . . . *when she listened or permitted other staff members to listen to attorney-client privileged phone calls.*

_____

FOREPERSON

II. We, the jury, find the defendant MICHELLE ZADRA, GUILTY of FIRST DEGREE OFFICIAL MISCONDUCT . . . *when she listened or permitted other staff members to listen to attorney-client privileged phone calls.*

_____

FOREPERSON

(Emphasis added.)

The verdict form for Count 3 included similar wording:

I. We, the jury, find the defendant MICHELLE ZADRA, NOT GUILTY of FALSE REPORTING TO AUTHORITIES . . . *when she provided false information to the Colorado Bureau of Investigation regarding her testimony . . . .*"

_____

FOREPERSON

II. We, the jury, find the defendant MICHELLE ZADRA, GUILTY of FALSE REPORTING TO AUTHORITIES . . . *when she provided false information to the Colorado Bureau of Investigation regarding her testimony . . . .*"

_____

FOREPERSON

(Emphasis added.) The verdict form for count 13 included language similar to that in the verdict form for count 3.

¶ 44 Several of the jury instructions that accompanied the verdict forms are relevant here. Instruction 3 made clear that the charges against defendant were not evidence. Instruction 4 made clear the presumption of innocence, that the prosecution had the burden of proving each element of each charge beyond a reasonable doubt, and that the jury had the freedom (indeed, the obligation) to find defendant not guilty if the prosecution had not proved any one element. Instruction 9 made clear that an act must have been accompanied by a particular state of mind to allow a finding of guilt. The instructions also correctly identified the elements of the charged offenses, and made clear that it was the province of the jury to decide if the prosecution had proved those elements.

¶ 45 Further, defendant's trial counsel walked through the disputed verdict forms with jurors during closing argument. He argued that some of the facts and elements alleged had not been proved. And he conceded other facts, arguing, for instance, that "in this case, the question isn't really whether or not she listened to an attorney-client phone call, it's whether she knew about it at the time of the testimony."

### 2. Invited Error

¶ 46 The People argue that any error was invited, because defendant's counsel affirmatively acquiesced to the jury instructions in the district court. The record indicates that defendant's counsel reviewed the verdict forms along with jury instructions before they were tendered to the jurors. Defendant's counsel then told the court he agreed with the instructions and had the following exchange with the court:

THE COURT: Art, do you wish to make any record on the instructions?

DEFENSE ATTORNEY: Not as of yet, Your Honor. I think it sounds like we resolved it, but I just want a quick peek at the final draft to make sure I don't misstate anything when I'm trying to argue.

¶ 47 Defendant's counsel did not thereafter object to the verdict forms.

¶ 48 The doctrine of invited error is a species of estoppel that applies to actions taken in the course of litigation, and is intended to prevent parties from inducing error and then profiting from that error. *Horton v. Suthers*, 43 P.3d 611, 618 (Colo.2002).

"A jury instruction proposed by a defendant triggers the invited error doctrine." *People v. Butler*, 251 P.3d 519, 522 (Colo.App.2010). We may review errors based on trial counsel's omissions for plain error, but errors created by trial counsel are not reviewable. *People v. Foster*, 2013 COA 85, ¶ 36, 364 P.3d 1149, 2013 WL 2450768.

¶ 49 Arguably, defendant's counsel invited the errors which defendant now asserts on appeal. But on this record we cannot conclude definitively that counsel's failure to act was a matter of trial strategy, rather than mere oversight. Nor can we tell whether defendant's counsel participated in including the language at issue. Therefore, we will review defendant's contention.

3. Standard of Review and Applicable Law

¶ 50 Where, as here, a party failed to object to verdict forms at trial, we review for plain error. *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003); *People v. LePage*, 397 P.3d 1074, 1083, 2011 WL 544019 (Colo.App.2011) (*cert. granted* 2011 WL 4015578 (Sept. 12, 2011)). "Under plain error review, reversal is warranted only when an error is obvious and substantial, and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Chavez*, 2012 COA 61, ¶ 12, 318 P.3d 22, 2012 WL 1231834. Such an "error must impair the reliability of the judgment of conviction to a greater degree than under harmless error to warrant reversal." *Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116.

¶ 51 We consider alleged errors in verdict forms in the context of all the jury instructions. *LePage*, 397 P.3d at 1085. An incorrect jury verdict form can, in some circumstances, be cured by correct jury instructions. *Id.* at 1078 ("[A]n incorrect verdict form does not equate to an incorrect jury instruction.").

¶ 52 Applying this analytical framework, the supreme court held in *Lehnert v. People*, 244 P.3d 1180 (Colo.2010), that a verdict form which eliminated a statutorily mandated finding of fact was plain error, despite the fact it was accompanied by a correct jury instruc-

tion. *Id.* at 1187–88 (statute required finding of possession *and* threat to use deadly weapon, but verdict form required finding of possession *or* threat). In contrast, a division of this court held in *LePage* that there was no plain error where a lesser included verdict form was omitted from the packet given to jurors and jurors convicted the defendant of the greater offense. *LePage*, 397 P.3d at 1081. The division held that the court's instructions overcame any errors in wording contained in the verdict forms. *See id.* at 1084.

4. Analysis

¶ 53 At the outset, it is not clear there was any error in this case. The district court could have improved the verdict forms by omitting the language at issue. Viewed in light of the instructions, however, the language could have been read as referring to allegations rather than established facts. Nevertheless, for the purpose of resolving this case, we will assume that the language in the verdict forms was error, and that the error was obvious.

¶ 54 The language in the verdict form for Count 2 was not plain error because defendant's trial counsel conceded before the jury that defendant had listened to attorney-client privileged phone conversations. Defendant's counsel told the jury in closing that defendant had listened to at least one such conversation, and argued that the issue for the jury was whether she had done so knowingly. Thus, the language at issue from the instruction pertained to a fact that was not in dispute. *See People v. Miller*, 113 P.3d 743, 750 (Colo.2005) ("[A]n erroneous jury instruction does not normally constitute plain error where the issue is not contested....").

¶ 55 In addition, the language in neither form constituted plain error because (1) the court properly instructed the jury that the prosecution was required to prove defendant had acted "knowingly" (a term the court defined); and (2) the prosecution presented overwhelming evidence that defendant: (a) listened to attorney-client privileged phone conversations; and (b) provided false information to the CBI until her confession to

Agent Haynes. As discussed above, defendant confessed to having listened to attorney-client phone conversations and then denying having done so under oath. Her confession also directly contradicted her earlier statements to CBI investigators. Defendant's colleague testified that defendant had trained her to use the telephone system and had told her the details of privileged telephone conversations. And the prosecution presented electronic records of the calls that had been monitored (along with records of who was working at the jail at the relevant time).

¶ 56 In light of the other instructions and the overwhelming evidence, we conclude that the presumed errors did not so undermine the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *Id.* at 750; *People v. Rogers*, 2012 COA 192, ¶¶ 26–27, 317 P.3d 1280, 2012 WL 5457358 (concluding error was not substantial where the jury could have relied on alternative evidence).

### E. Cumulative Error

¶ 57 Defendant next contends that certain other asserted errors, though not individually warranting reversal, nonetheless require reversal when considered cumulatively. Because we conclude that defendant has failed to establish any such error, we reject this contention. *See People v. Krueger*, 2012 COA 80, ¶ 78, 296 P.3d 294; *People v. Rivas*, 77 P.3d 882, 893 (Colo.App.2003) (cumulative error doctrine applies only if district court committed numerous errors).

¶ 58 Initially, we decline to consider defendant's list of four alleged "admissibility errors" that appear on page 42 of her opening brief accompanied only by citations to the record. *See Castillo v. Koppes–Conway*, 148 P.3d 289, 291 (Colo.App.2006) (declining to review issues that the appellant attempted to incorporate by reference to documents in the record; this technique impermissibly shifts the task of synthesizing arguments to the appellate court, and makes a mockery of rules that govern the length of briefs); *see also People v. Sexton*, 2012 COA 26, ¶ 35, 296 P.3d 157.

¶ 59 Defendant's less conclusory assertions of error ultimately fail. Defendant contends that the district court erred by allowing an expert witness to testify to legal conclusions regarding attorney-client privilege. This assertion of error is not supported by the record. Mr. Stromayer's attorney testified regarding his *expectations* of attorney-client privilege during phone conversations with his client. He did not testify as an expert witness or give legal opinions. At one point, Mr. Stromayer's attorney started to launch into a broader explanation of privilege, but he was interrupted by an objection. The district court warned the prosecutor that the witness should limit his testimony to his personal expectations regarding the calls. The witness then did so.

¶ 60 Defendant also contends that the district court erred when it allowed Agent Haynes to testify that defendant had provided false information to him, because it was "opinion testimony as to whether a witness is telling the truth on a specific occasion." Agent Haynes, however, testified regarding an element of the crime of false reporting, and he had foundation to do so. Further, defendant did not testify at trial, and so CRE 608(a), on which she relies, is inapposite. And, Agent Haynes' testimony explained the reason for his subsequent method and direction of questioning; hence, it was not improper comment on or opinion about defendant's credibility. *See Davis v. People*, 2013 CO 57, ¶¶ 15–19, 310 P.3d 58.

¶ 61 Defendant contends that the district court erred by allowing the jury to deliberate in the middle of trial. The record reveals this exchange:

> THE COURT: ... Remember the previous admonition: Don't discuss this case, don't do any homework, don't investigate matters, don't tweet, Facebook, any of those other things that I don't understand and we'll see you at 1:00-ish.
>
> JUROR: Can I ask a question in terms of tonight or tomorrow, will we, as a jury, decide and can we discuss that a little bit right now?
>
> THE COURT: You can discuss it back there.

JUROR: We can talk about that?

THE COURT: Yeah. Don't come to blows if some of you want—be nice.

JUROR: Thank you.

¶ 62 Though it seems most likely that the district court was instructing jurors to discuss whether they wanted to stay late to deliberate or come back the next day, the record is not free from ambiguity. Defendant's counsel did not object to the district court's statements to jurors, however, and we do not perceive any plain error undermining the fundamental fairness of the trial. *See People v. Flockhart,* 2013 CO 42, ¶¶ 24–30, 304 P.3d 227 (error in allowing mid-trial deliberations was harmless).

¶ 63 Last, defendant contends that the district court erred by telling defendant that she need not be present at the jury instruction conference. The district court did indeed tell defendant that the discussion would be boring. But the district court also twice told defendant that she was welcome to stay. And it appears from the record that defendant did attend the conference. (The conference was prefaced by the court's comment, "The Defendant and counsel are back.") Therefore, we perceive no error, much less plain error.

### F. Merger

¶ 64 Defendant contends that her seven perjury convictions and one of her convictions for official misconduct are multiplicitous and therefore violate constitutional prohibitions against double jeopardy. We agree with defendant that two of her perjury convictions (on counts 9 and 10) violate the constitutional prohibitions against double jeopardy, and therefore must be merged into a third perjury conviction (on count 6), but otherwise conclude that the remaining convictions need not be merged.

#### 1. Waiver

¶ 65 Defendant concedes that she did not raise her multiplicity challenge in the district court, but urges us to review it for plain error. Though the People acknowledge that divisions of this court have reviewed unpreserved multiplicity challenges for plain error, *see, e.g., People v. Herron,* 251 P.3d 1190 (Colo.App.2010); *People v. Vigil,* 251 P.3d 442 (Colo.App.2010), they argue that defendant nevertheless waived her multiplicity challenge by failing to object to the charges before trial, and therefore pursuant to Crim. P. 12(b) it is not reviewable. We conclude that defendant's challenge is reviewable, albeit only for plain error.

Crim. P. 12(b)(2) provides, in relevant part:

> Defenses and objections based on defects in the institution of the prosecution or in the indictment or information or complaint, or summons and complaint, other than that it fails to show jurisdiction in the court or to charge an offense, may be raised only by motion.... Failure to present any such defense or objection constitutes a waiver of it, but the court for cause shown may grant relief from the waiver.

Crim. P. 12(b)(3) further provided that a motion required by Crim. P. 12(b) "shall be made within 20 days following arraignment."

¶ 66 No Colorado appellate decision has addressed whether a multiplicity challenge to counts of a charging document is an objection of the type which Crim. P. 12(b)(2) requires. The People correctly point out, however, that the federal courts, applying substantially similar Fed.R.Crim.P. 12(b)(2)(B) and (e), appear to have held, uniformly, that it is, at least where the defect is apparent from the face of the charges. *See, e.g., United States v. Honken,* 541 F.3d 1146, 1153–54 (8th Cir. 2008); *United States v. Dixon,* 273 F.3d 636, 642 (5th Cir.2001); *United States v. Klinger,* 128 F.3d 705, 708 (9th Cir.1997); *United States v. McIntosh,* 124 F.3d 1330, 1336 (10th Cir.1997). We see no reason to hold to the contrary, particularly in light of the substantial similarity of the Colorado and federal rules. *See Crumb v. People,* 230 P.3d 726, 731 n.5 (Colo.2010) (looking to federal law interpreting a federal rule of criminal procedure similar to a Colorado rule); *People v. Stephenson,* 165 P.3d 860, 869 (Colo.App. 2007) (where a federal rule of criminal procedure is similar to a Colorado rule, we may look to federal cases applying the federal rule for guidance); *cf. Russell v. People,* 155 Colo. 422, 426, 395 P.2d 16, 18 (1964) (claim

that a charge is duplicitous must be raised in accordance with Crim. P. 12(b)).[6]

¶ 67 But that is not the end of the matter. The federal appellate courts disagree as to the effect of a "waiver" under the federal rule. Some hold that such a waiver precludes appellate review altogether, absent a showing of good cause for overlooking the waiver. *See, e.g., United States v. Walker,* 665 F.3d 212, 227–28 (1st Cir.2011) (discussing the split in authority on this issue; holding that review is precluded altogether). Others, however, hold that while review may be precluded altogether, plain error review is available if it appears the failure to make the motion or argument was not intentional, but a result of mere oversight. *See, e.g., United States v. Robinson,* 627 F.3d 941, 957 (4th Cir.2010) (claim of duplicitous charge); *United States v. Lloyd,* 462 F.3d 510, 514 (6th Cir.2006) (same).

¶ 68 In *United States v. Johnson,* 415 F.3d 728 (7th Cir.2005), the Seventh Circuit Court of Appeals, which takes the latter approach, explained the rationale for that approach as follows:

> We think . . . that in context the word "waiver" in Rule 12(e) does not carry the strict implication of an "intentional relinquishment of a known right" that precludes all appellate review. . . . [A] true waiver occurs only through an *intentional* relinquishment of an argument, while a forfeiture is the result of a *neglectful* failure to present an argument. . . . It is also worth noting that Rule 12(e) itself says that "[f]or good cause, the court may grant relief from the waiver." This too makes it sound more like what we would normally call forfeiture.

*Id.* at 730 (citations omitted; emphasis in original); *see also* 1A Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 193, at 411, 413–14 (4th ed. 2008) (noting that the practice in the federal appellate courts with respect to review of unpreserved claims subject to Fed.R.Crim.P.

12(b) is "not entirely predictable," and characterizing the Seventh Circuit's reasoning as "persuasive").

¶ 69 We note that some federal appellate courts have held specifically that a "waived" multiplicity claim is nevertheless reviewable for plain error. *See, e.g., United States v. Chilingirian,* 280 F.3d 704, 712 (6th Cir. 2002); *McIntosh,* 124 F.3d at 1336.[7]

¶ 70 We find the reasoning in *Johnson* persuasive. Therefore, we hold that if it appears that the failure to bring a motion claiming multiplicity within the time required by Crim. P. 12(b)(2) and (3) was a result of oversight, and the multiplicity claim on appeal is not one requiring development of a factual record, *see People v. Greer,* 262 P.3d 920, 936 (Colo.App.2011) (J. Jones, J., specially concurring), we may review the claim for plain error.

¶ 71 There is no indication in this case that defendant's failure to bring a timely motion asserting multiplicity was anything other than an oversight. And no further factual record needs to be developed to adequately and properly analyze defendant's challenge. We therefore proceed to review the merits.

### 2. Merits

¶ 72 The Double Jeopardy Clauses of both the United States and Colorado Constitutions protect a defendant from being twice placed in jeopardy for the same criminal offense. U.S. Const. amend. V; Colo. Const. art. II, § 18; *Woellhaf v. People,* 105 P.3d 209, 214 (Colo.2005). This means, as relevant here, that the Double Jeopardy Clauses protect " 'against multiple punishments for the same offense.' " *Woellhaf,* 105 P.3d at 214 (quoting *Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)). "Multiplicity"—the charging of multiple counts and the imposition of multiple punishments for the same offense—is a way of running afoul of this

---

6. A charge is duplicitous if it charges more than one offense in a single count. In this case we address a claim that multiple counts charge but one offense.

7. Some federal appellate courts hold that even if a multiplicity challenge to the indictment is barred, a multiplicity challenge to sentences is not. *E.g., United States v. Abboud,* 438 F.3d 554, 556–57 (6th Cir.2006). Defendant has asserted a sentencing challenge in this case.

prohibition. *See Quintano v. People*, 105 P.3d 585, 589 (Colo.2005); *Woellhaf*, 105 P.3d at 214; *People v. McMinn*, 2013 COA 94, ¶ 19, — P.3d ——, 2013 WL 3441643; *People v. Arzabala*, 2012 COA 99, ¶ 20, 317 P.3d 1196, 2012 WL 2353784; *Vigil*, 251 P.3d at 448.

▮ ¶ 73 Determining whether charges are multiplicitous involves a two-part inquiry. We first identify the allowable unit of prosecution created by the General Assembly. Then we look at the evidence supporting the charges to determine whether, in light of the unit of prosecution, the charges are factually distinct. *See People v. Abiodun*, 111 P.3d 462, 470 (Colo.2005); *Quintano*, 105 P.3d at 590–91; *Woellhaf*, 105 P.3d at 215; *Vigil*, 251 P.3d at 448.

¶ 74 We identify the allowable unit of prosecution by examining the language of the statute creating the offense. *See Roberts v. People*, 203 P.3d 513, 516–17 (Colo.2009); *Woellhaf*, 105 P.3d at 215.

¶ 75 A person commits perjury "if in any official proceeding he knowingly makes a materially false statement." § 18–8–502(1). Under the plain language of the statute, the allowable unit of prosecution for perjury is "a materially false statement." *See Commonwealth v. Gurney*, 13 Mass.App.Ct. 391, 433 N.E.2d 471, 477–78 (Mass.App.Ct.1982) (so construing a similar perjury statute).

¶ 76 We next examine the evidence supporting each charge. Often,

> [t]o determine whether offenses are factually distinct, courts have considered (1) whether the acts occurred at different times and were separated by intervening events; (2) whether there were separate volitional acts or new volitional departures in the defendant's course of conduct; and (3) factors such as temporal proximity, the location of the victim ..., the defendant's intent as indicated by his or her conduct and utterances, and the number of victims.

*McMinn*, ¶ 22 (citing *Quintano*, 105 P.3d at 591). But there are no sets of factors that are dispositive in every case "because factual distinctness is ultimately a function of the legislature's definition of the crime itself." *Abiodun*, 111 P.3d at 470.

▮ ¶ 77 Courts in other jurisdictions have applied the following test to determine whether perjury charges are factually distinct: "individual lies will only constitute the same perjury, thereby barring multiple convictions, where they involve facts which are 'substantially identical.' " *Gurney*, 433 N.E.2d at 475 (quoting in part *Masinia v. United States*, 296 F.2d 871, 880 (8th Cir. 1961)). Put another way, separate perjury charges are permissible if they require different factual proof of falsity, even if they are related and arise out of the same transaction or subject matter. *United States v. Graham*, 60 F.3d 463, 467 (8th Cir.1995); *United States v. Molinares*, 700 F.2d 647, 653 (11th Cir.1983); *State v. Servello*, 80 Conn.App. 313, 835 A.2d 102, 111 (Conn.App.Ct.2003); *People v. Guppy*, 30 Ill.App.3d 489, 333 N.E.2d 576, 578–80 (1975); *State v. Warren*, 229 Wis.2d 172, 599 N.W.2d 431, 437–38 (Wis. Ct.App.1999); *see also Gebhard v. United States*, 422 F.2d 281, 289–90 (9th Cir.1970) ("[W]e do not think it proper that the government bludgeon a witness who is lying by repeating and rephrasing the same question, thus creating more possible perjury counts.").

¶ 78 We conclude that this test is consistent with the Colorado perjury statute and the prohibition against double jeopardy. In so concluding, we necessarily reject defendant's argument that a series of materially false statements constitutes a single instance of perjury—for which there can be only one charge—if made within a relatively short period of time in the same proceeding. Many courts in other jurisdictions have held that a person may be charged with multiple perjury counts arising out of testimony at the same proceeding. *See, e.g., Molinares*, 700 F.2d at 652–53; *United States v. De La Torre*, 634 F.2d 792, 795 (5th Cir.1981); *Servello*, 835 A.2d at 111; *Gurney*, 433 N.E.2d at 478–79; *Warren*, 599 N.W.2d at 437–38; *see also Seymour v. United States*, 77 F.2d 577, 581 (8th Cir.1935) ("The commission of perjury as to one matter does not absolve the witness or afford him immunity as to all other matters covered by his testimony at the same hearing. The obligation to testify truly ... is present as to every material answer given

by him.”); *Guppy*, 333 N.E.2d at 580 (“To adopt defendant's position [that all materially false statements given in a single proceeding must be included in one charge] would permit witnesses, who lie once, to escape punishment for an unlimited number of additional false statements. We believe such a result is not contemplated by the statute and should not be countenanced by the courts.”).[8]

¶ 79 We now examine the charges at issue to determine whether they are factually distinct.

¶ 80 The verdict forms for the perjury charges identified the allegedly materially false statements as follows:

> Count 4: “Q: Is it allowable for other members of the Sheriff's Department to access this particular phone bank? A: They could but I haven't trained anybody on it.”
>
> Count 5: “Q: So you're saying that as far as you know, no deputy even knows how to monitor an inmate's calls even if they wanted to? A: Correct.”
>
> Count 6: “Q: Did you monitor any of [Mr. Stromayer's] phone calls with his attorney? A: No.”
>
> Count 7: “Q: Do you know of anyone monitoring [Mr. Stromayer] and his attorney's phone calls? A: No.”
>
> Count 8: “Q: And you don't recall any conversation you may have had with Sergeant Rogers about phone calls being monitored? A: No.”
>
> Count 9: “Q: Have you listened to any conversations between Mr. Stromayer and his attorney? A: Not that I'm aware of. Because you know if I clicked through something there was never anything that said attorney whatever his last name is.”
>
> Count 10: “Q: And you haven't listened to any conversations between the defense attorney and his client? A: Not that I'm aware of.”

These descriptions tracked those in the charging document, and evidence was pre-sented at trial to support each discrete charge.

¶ 81 Except for counts 6, 9, and 10, these charges required different factual proof to establish guilt. Counts 6, 9, and 10, however, could be and were established by identical proof—evidence that (1) defendant had knowingly listened to any telephone conversation between Mr. Stromayer and his attorney and (2) defendant's denials were made to the same interrogator in the same proceeding. *See Gurney*, 433 N.E.2d at 475 n.7 (collecting cases reversing perjury convictions based on multiple responses to the same question).

¶ 82 We therefore conclude that counts 6, 9, and 10 are multiplicitous, and that the convictions on and sentences for all three counts cannot stand. *See Arzabala*, ¶ 19 (observing that even under plain error analysis, a double jeopardy violation will invariably require relief); *People v. Tillery*, 231 P.3d 36, 47–48 (Colo.App.2009) (same), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo.2011). The convictions on counts 9 and 10 are merged into the conviction on count 6.

## G. Consecutive Sentencing

¶ 83 We review a district court's decision to impose consecutive sentences for an abuse of discretion. *People v. Glasser*, 293 P.3d 68, 78 (Colo.App.2011). However, this discretion is not absolute. The sentences for separate convictions arising from the same criminal episode must be ordered to run concurrently if the convictions are based on identical evidence. § 18–1–408(3), C.R.S.2013; *see Glasser*, 293 P.3d at 78–79; *People v. Jiron*, 796 P.2d 499, 499–500 (Colo. App.1990). “[W]hether the evidence supporting the offenses is identical turns on whether the charges result from the same act, so that the evidence of the act is identical, or from two or more acts fairly considered to be separate acts, so that the evidence is different.” *People v. Torrez*, 2013 COA 37, ¶ 34, 316 P.3d 25, 2013 WL 1240883 (quoting

---

8. Defendant's reliance on section 18–1–408(1)(e), C.R.S.2013, is misplaced. That subsection prohibits multiple convictions for an “offense defined as a continuing course of conduct ... unless the law provides that specific periods or instances of [criminal conduct] constitute separate offenses.” Section 18–8–502(1) does not define perjury as a continuing course of conduct and it provides that specific instances of perjury constitute separate offenses.

*Juhl v. People,* 172 P.3d 896, 902 (Colo. 2007)); *see also Qureshi v. Dist. Court,* 727 P.2d 45, 47 (Colo.1986) (convictions for first degree assault and attempted manslaughter were not based on identical evidence because the defendant stabbed the victim twice).

¶ 84 Except for the convictions on counts 6, 9 and 10, the convictions were not based on identical evidence. For that reason, the district court maintained its discretion in sentencing on the surviving convictions. We perceive no abuse of that discretion, and, insofar as the exercise of that discretion is concerned, defendant does not argue any such abuse.

¶ 85 The judgment is reversed as to the convictions on counts 9 and 10. The sentences on counts 9 and 10 are vacated. The judgment and sentences are otherwise affirmed.

JUDGE DAILEY and JUDGE ROMÁN concur.